**CORRAL, WODISKA Y CA. v. ANDERSON, THORSON & CO. et al.**

No. 6204.

Circuit Court of Appeals, Seventh Circuit.

Jan. 24, 1938.

Rehearing Denied March 17, 1938.

Justus Chancellor, Justus Chancellor, Jr., Carl H. Lundquist, and James O'Callaghan, all of Chicago, Ill., for appellants.

Winston, Strawn & Shaw, of Chicago, Ill. (Harold A. Smith and Thomas I. Underwood, both of Chicago, Ill., of counsel), for appellee.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

TREANOR, Circuit Judge.

This is an appeal from a judgment in favor of the plaintiff in a suit to recover $41,114.85 for cigars alleged to have been sold and delivered to the defendant. The defendant filed a plea of non assumpsit, affidavit of merits, and a counterclaim for $100,000 damages. At the close of all evidence and after argument the court, upon plaintiff's motion, withdrew the evidence from the consideration of the jury and instructed the jury to find the issues for the plaintiff and to assess the plaintiff's damages in the sum of $38,661.66, together with interest thereon from May 3, 1933; and

the court further instructed the jury "to find the issues in favor of the plaintiff and against the defendant on the defendant's pleas of set-off."

The defendant is an Illinois corporation, Anderson, Thorson & Co., and the plaintiff, Corral, Wodiska Y Ca., is a foreign corporation organized under the laws of Florida. Prior to May 1, 1917, defendant owned certain trade and registered marks described in certificate of registrations as "Bering" and "Vitus Bering," and had the exclusive right to their use and of sale thereunder throughout the United States. These brands were specially featured in Chicago and suburbs; and the cigars which were sold under the brands were made by the plaintiff for the defendant and were described as a "clear Havana cigar" of the finest quality.

Early in the year 1917, the plaintiff indicated a desire to purchase the trade-marks "Bering" and "Vitus Bering" and negotiations were conducted by a Mr. Hammer, acting for the plaintiff, with Mr. Thorson, the vice president of the defendant company. It is the contention of the defendant, the appellant here, that the result of the negotiations was a contract by the terms of which the defendant agreed to transfer the brands, or trade-marks, to the plaintiff, and the plaintiff agreed that the defendant should have the exclusive right of sale of cigars under the trade-name in the city of Chicago and suburbs, and that "plaintiff would not, at any time, sell any cigars so branded to any one either in said territory or in any other territory where the same would be transferred into defendant's said exclusive territory, or to any person, firm, or corporation that would bring the same or send the same into said exclusive territory and which territory was, as a condition of transfer, reserved and agreed upon as belonging exclusively to defendant who should have and retain the said exclusive sales rights and business therein."

The basis of defendant's counterclaim is the alleged violation of defendant's right to have the exclusive sale of the Bering brand in Chicago and vicinity. We adopt as correct the following summary of the contested issues as stated by appellee:

(1) Whether or not the defendant Anderson, Thorson & Co. had a definite and specific agreement with the plaintiff, Corral, Wodiska Y Ca., for an exclusive sales territory.

(2) Whether or not, after assuming there was a definite agreement between the parties, such agreement was lacking in mutuality.

(3) Whether or not the defendant Anderson, Thorson & Co. could by parol testimony vary the terms of a written assignment in order to show that it, the defendant, retained some right or reversionary interest in and to the trade-marks and trade-names.

(4) Whether or not the evidence of damages introduced by the defendant should have been submitted to the jury.

As stated above, the trial court withdrew the evidence from the consideration of the jury and directed a verdict for the plaintiff and against the defendant. Appellant urges that such action of the trial court constitutes reversible error for the reason that there was sufficient substantial evidence to require a submission to the jury of the issues of fact presented by the counterclaim and replication thereto. Appellant also urges that the trial court committed prejudicial error by excluding certain testimony which was offered to explain what was meant by the recital "other good and valuable considerations" in the written assignment of the trade-marks "Bering" and "Vitus Bering" to the plaintiff from the defendant.

An examination of the evidence in the record leads us to the conclusion that there was substantial evidence from which the jury reasonably could have concluded that a definite contract was made between the plaintiff and the defendant prior to the 29th day of May, 1917; and that by the terms of the contract the defendant agreed to assign its title to the trade-marks in question to the plaintiff in consideration of the plaintiff's paying the defendant $650 and granting to the defendant "the exclusive sale for the Bering brand for Chicago and vicinity."

The foregoing conclusion is borne out by the following excerpts from the record:

(1) "I had negotiations with Mr. Hammer of Corral, Wodiska with reference to this copyright I bought in February, 1917. He said, 'we would like to purchase the Bering copyright, the Bering label.' I said, 'we might consider that, but we must retain absolute control for Chicago and vicinity.' Mr. Hammer said, 'That will be satisfactory to my firm I am sure.'" (Testimony of Mr. Thorson, vice president of defendant company.)

(2) "As regards the Bering Brand, * * * we will be willing to allow you the $650.00 as paid. * * *

"Rest assured that you have the exclusive sale for the Bearing Brand for Chicago and vicinity, and we shall certainly sell to no one who would be purchasing the goods merely to ship them into Chicago to interfere with your trade." (A letter bearing date April 9, 1917, from Corral, Wodiska Y Ca. to Anderson, Thorson & Co.)

(3) "Stipulation.

"It is Hereby Stipulated and Agreed, by and between the parties to the above entitled cause that Hiram Hammer, salesman for Corral, Wodiska Y Ca., and Robert N. Anderson, President of Anderson Thorson & Co., would, if called and placed upon the witness stand in the above entitled cause, testify in chief in substance as follows: * * *

"That defendant used said brand, Vitus Bering, and the labels in connection with its business then being conducted by it in the City of Chicago, and it was then having cigars manufactured by plaintiff put in said label and wrapper bearing the name of said brand so certified in the two certificates aforesaid, and was selling same in the City of Chicago and vicinity to its customers.

"That plaintiff, Corral, Wodiska Y Ca., through Hiram Hammer, approached the defendant, through Axel L. Thorson, for the privilege of using said registered copyright and label in the territory outside the City of Chicago and vicinity, and was refused such transfer except on the condition and understanding between the parties that defendant retain the exclusive right to the use of said brand in the City of Chicago and vicinity and upon the expressed understanding and condition that plaintiff would not sell to anyone in the City of Chicago or to anyone outside the City of Chicago for the purpose of shipping into Chicago or vicinity to interfere with defendant's trade in said brand.

"That Hiram Hammer, on behalf of plaintiff Corral, Wodiska Y Ca., then agreed with Axel Thorson acting for defendant, that if such brand was transferred to plaintiff, plaintiff would accept the same subject to the reservation made by defendant, and upon the terms and conditions proposed by defendant to the effect that defendant

should retain the exclusive use of said brand in the City of Chicago and vicinity, and that plaintiff would not interfere with defendant's trade or sell to anyone interfering with defendant's trade in Chicago or vicinity, but would confine its operations to the territory outside of Chicago and vicinity.

"That Hiram Hammer reported to the plaintiff the agreement which he had made with Anderson, Thorson & Co., defendant, and plaintiff approved his action in connection therewith.

"That thereafter, upon said agreement and understanding between the parties, and pursuant thereto, defendant executed the assignments appearing on the back of said certificates under date of May 29th, 1917.

"That, thereafter, plaintiff and defendant acted in harmony with the said stipulation and agreement aforesaid for a period of about nine years, observing respectively respecting the rights of each as stipulated."

■■ Assuming that a contract, as stated above, was entered into between the plaintiff and the defendant, there was no lack of mutuality. The defendant completely performed its part of the contract when it made the written assignment on May 29, 1917, and it appears from the evidence that the plaintiff paid the $650 by allowing defendant credit on purchases of cigars. The only outstanding obligation was that of the plaintiff to continue to respect the exclusive sales rights of the defendant company in the Chicago territory. The suggestion that prior negotiations were merged in the written assignment of May 29, 1917, is untenable since the written assignment did not constitute a contract between the parties, but merely constituted performance by the defendant of its obligation under the contract. Furthermore, no violation of the rule that parol evidence cannot be introduced to contradict the terms of a written contract occurs in the instant case by permitting the defendant to introduce parol evidence for the purpose of showing that the consideration for the assignment of the trade-marks was the grant of exclusive sales rights for the Chicago territory.

■ There appears to be no legal obstacle either to a retailer's assigning his trade-mark to the manufacturer of the article sold by the retailer, or to a manufacturer's assigning his trade-mark to one who sells the goods of the manufacturer.[1] And we see no legal objection in the instant case to the plaintiff's agreeing to permit the defendant the exclusive sales rights of cigars in Chicago and vicinity of the Bering brand as part consideration for the defendant's agreement to assign the Bering trade-marks to the plaintiff.

■ In view of the foregoing, we necessarily conclude that it was prejudicial error for the trial court to exclude the testimony which was offered for the purpose of explaining what was meant by the words "other good and valuable consideration" in the written assignment of the trade-marks.

Assuming the existence of a valid contractual obligation by the plaintiff company to respect and protect the exclusive sales rights of the defendant in the Chicago territory, there was substantial evidence from which the jury reasonably could have found that the plaintiff had violated its obligation.

Since the case did not go to the jury, there was no occasion for the trial court to instruct the jury on the subject of damages. It may be that some of the items of loss which were relied upon by the defendant company are too speculative to admit of the application of any sound measure of damages. We think there was substantial evidence from which the jury reasonably could have found facts which would have required the conclusion that plaintiff's direct sales to Walgreen Drug Company and Liggett Company violated defendant's exclusive sales right in the Chicago territory; and there was also substantial evidence from which the jury reasonably could have concluded that such direct sales by the plaintiff caused a money loss to the defendant which was susceptible of a definite calculation.

We conclude that the trial court erred in withdrawing the evidence from the consideration of the jury and in directing a verdict against the defendant on the issues raised by its counterclaim and the replication thereto.

The judgment of the District Court is reversed and cause remanded for further proceedings not inconsistent with this opinion.

[1] See The Coca-Cola Bottling Co. v. The Coca-Cola Co., 1920 D.C., 269 F. 796; United States Ozone Co. et al. v. United States Ozone Co. of America, 1932, 7th Cir., 62 F.2d 881.